/491-15

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 1 7 2015

Abel Acosta, Clerk

ORIGINAL

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00736-CR

FILED IN
COURT OF CRIMINAL APPEALS

NOV 18 2015

Abel Acosta, Clerk

## Julio Hernandez

v.

## The State of Texas

# Direct Challenge of The Texas Court of Appeals, Third District Court's Decision

Julio Hernandez

TDCJ# 01892013

3001 S. Emily Dr

Beeville, TX 78102

# Statement of the Case

This is a challenge of the decision made by the Texas Third Court of Appeals. An appeal was presented to the court and was denied. I formally challenge the court's decision.

## Summary of the Argument

Before and during the trial there were many inconsistencies that occurred. I believe that I did not receive a fair interview I asked for a translator and the detective in charge had more than enough time to get one. He did not accommodate my request and during the interview, being that I do not speak perfect English, I tried my best to answer the questions that were being asked. I was coerced into a testimony of guilt, the detective told me that if I answered in accordance to the complaint made against me that I would be able to have contact with my children, since my wife at the time was not allowing me visitation. I was not given the opportunity to express myself in my native tongue, the detective took advantage of this handicap and manipulated me into a confession, not only by the promise of visitation with my children but also the deception of being told that they had DNA evidence. The words of my ex-wife played through my mind "payback is a bitch" and "you are going to

**remember me for the rest of your life." The full interview was not**

**shown parts were cut out.**

*(Rogers v. Richmond, 365 U.S. 534, 540 (1961) [proper analysis is coercion or no coercion as opposed to truth or falsity of confession] ("Our decisions under that Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true, but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law. To be sure, confessions cruelly extorted may be and have been, to an unascertained extent, found to be untrustworthy. But the constitutional principle of excluding confessions that are not voluntary does not rest on this consideration.")*

*(Watts v. Indiana, 338 U.S. 49, 54 (1949) [involuntary confession in murder case] ("To turn the detention of an accused into a process of wrenching from him evidence which could not be extorted in open court, with all its safeguards, is so grave an abuse of the power of arrest as to offend the procedural standards of due process. This is so because it violates the underlying principle in our enforcement of the criminal law. Ours is the accusatorial, as opposed to the inquisitorial, system. Such has been the characteristic of Anglo-American -criminal justice since it freed itself from practices borrowed by the Star Chamber from the Continent whereby an accused was interrogated in secret for hours on end.. Under our system, society carries the burden of proving its charge against the accused not out of his own mouth. It must establish its case not by interrogation of the accused, even under judicial safeguards, but by evidence independently secured through skillful investigation.")*

*(Chambers v. Florida, 309 U.S. 227, 237 (1940) [confessions extracted by psychological coercion] ("The testimony of centuries, in governments of varying kinds over populations of different races and beliefs, stood as proof that physical and mental torture and coercion had brought about the tragically unjust sacrifices of some who were the noblest and most useful of their generations. The rack, the thumbscrew, the wheel, solitary confinement, protracted questioning and cross questioning, and other ingenious forms of entrapment of the helpless or*

*unpopular had left their wake of mutilated bodies and shattered minds along the way to the cross, the guillotine, the stake and the hangman's noose. And they who have suffered most from secret and dictatorial proceedings have almost always been the poor, the ignorant, the numerically weak, the friendless, and the powerless.")*

**Proper defense was not given by the court appointed attorney. He did not do any kind of research to prove my innocence. The attorney met with my family the day before my trial. He gathered the minimal amount of information prior to the trial. I had many avenues that needed to be investigated but due to a lack of proper defense I was unjustly convicted of a crime that I did not commit.**

## Prayer

I pray that this honorable court will hear my plea and allow for another chance to prove my innocence. I ask for the conviction to be reversed and for a new trial to be held so the truth can come to light.

Respectfully,

Julio Cesar Hernandez

3001 S Emily Dr.

Beeville, TX 78102

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00736-CR

Julio Hernandez, Appellant

v.

The State of Texas, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-12-301705, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## MEMORANDUM OPINION

A jury convicted appellant Julio Hernandez of continuous sexual abuse of a child and assessed punishment at thirty-eight years' imprisonment. *See* Tex. Penal Code § 21.02. In two issues, Hernandez contends that (1) the evidence is insufficient to support his conviction; and (2) the jury charge contained error that resulted in egregious harm. We will affirm the trial court's judgment.

### BACKGROUND

The record shows that appellant began a romantic relationship with O.A.'s mother and moved in with O.A.'s mother, O.A., and O.A.'s sister in 2001.[1] In 2005, when O.A. was approximately seven years old, appellant and O.A.'s mother got married, and the family moved to

---

[1] The background of this case and the evidence adduced at trial are well known to the parties, and we therefore limit recitation of the facts.

a house on Ridgeway in Austin, where they lived for one year. They then bought a house on Blue Meadow in Austin and lived there from 2006 until appellant and O.A.'s mother separated in May 2010. Throughout the couple's relationship, O.A.'s mother worked as a home-health aide and was sometimes required to work overnight.

O.A. testified about acts of sexual abuse that occurred after the family moved to the home on Blue Meadow. According to her testimony, the acts included appellant penetrating her sexual organ with his sexual organ and appellant making contact with her sexual organ using his mouth. O.A. testified that "[i]t felt like every day" that appellant committed these acts and that the acts continued happening until her seventh-grade year. When O.A. was in seventh grade, O.A. told her mother about an instance of sexual abuse. O.A.'s mother confronted appellant, and appellant moved out.

Appellant did not testify at trial, but a videotape of his pre-trial interrogation was introduced as evidence at trial. In the videotape, appellant stated that he started having sex with O.A. when she was eleven or twelve years old. He stated that at first, he did not penetrate her but just touched her. He said that over time, he ended up putting his sexual organ into O.A.'s sexual organ on about four occasions and putting his fingers into her sexual organ on about three or four occasions. He further stated that all of the incidents occurred over approximately a two-year period.

After a trial, a jury convicted appellant of continuous sexual abuse of a child and assessed punishment at thirty-eight years in prison. This appeal followed.

## DISCUSSION

In two issues, appellant argues that (1) there is insufficient evidence that he committed two or more acts of sexual abuse after September 1, 2007, the date the continuous-sexual-abuse statute ("the statute") became effective; and (2) the trial court erred in failing to instruct the jury that the jury could consider only evidence of acts of sexual abuse occurring after September 1, 2007. We address each issue separately below.

### *Sufficiency of the Evidence*

When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences that can be drawn from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In our analysis, we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the jury reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." (quoting *Laster*, 275 S.W.3d at 517)).

To establish continuous sexual abuse of a child, the State must prove that, during a period of thirty or more days in duration, the defendant committed two or more acts of sexual abuse, and at the time of the commission of each of these acts of sexual abuse, the defendant was seventeen

3

years of age or older and the victim was younger than the age of fourteen. *See* Tex. Penal Code § 21.02. An "act of sexual abuse" includes, as is relevant here, aggravated sexual assault of a child. *See id.* A person commits aggravated sexual assault of a child if he knowingly or intentionally causes the penetration of a child's anus or sexual organ by any means or causes his mouth to contact the sexual organ of a child younger than fourteen years of age. *Id.* § 22.021(a)(1)(B)(i), (iii), (a)(2)(B).

To prove the offense of continuous sexual abuse of a child, the State need not prove the exact dates of each act of abuse occurring during the thirty-day time period. *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.) (noting that legislature created statute to address sexual assaults against children who are normally unable to identify exact dates of offenses when sexual abuse is ongoing); *see also Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006) (cautioning courts not to impose unrealistic expectations regarding proof of dates of abuse because child victims often do not know exact dates of sexual assault). However, the State must prove that the acts of sexual abuse occurred after September 1, 2007, the date the statute became effective. *See Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd) (statute does not apply to acts of sexual abuse committed before statute's effective date).

Considering all of the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support the jury's determination that appellant committed two or more acts of sexual abuse against O.A. over at least a 30-day time period that occurred after September 1, 2007. Specifically, appellant himself admitted during an interrogation that he put his sexual organ inside O.A.'s sexual organ on about four occasions and his fingers inside O.A.'s sexual

4

organ on three or four occasions during the time period when O.A. was eleven or twelve years old and that the incidents occurred over a two-year period. The evidence shows that O.A. was born in 1998, making O.A. eleven and twelve years old in 2009 and 2010, which was well after the September 1, 2007 effective date of the statute.

Further, O.A. testified that sexual acts constituting aggravated sexual assault began when the family moved to the house on Blue Meadow. O.A.'s mother testified that the family lived in the Blue Meadow house from 2006 until the time that O.A.'s mother and appellant separated in May 2010. At the time of the separation, O.A. was twelve years old. O.A. testified that "[i]t felt like every day" that appellant sexually assaulted her during that time. She further testified that the sexual acts happened "every time [her] mom would go to work," "regularly" and "very often" and that the acts did not stop until she was in seventh grade.

Appellant's statements alone are sufficient evidence that he committed two or more acts of sexual abuse against O.A. over at least a thirty-day duration after September 1, 2007, as his admissions indicated that he committed acts of sexual abuse against O.A. when she was eleven or twelve years old (which was 2009 and 2010) and that the time period over which he had sex with her lasted for two years. O.A. testified about more frequent incidents of sexual abuse, but her testimony was otherwise consistent with appellant's statements in that she testified that the sexual abuse occurred in the Blue Meadow house, which she lived in from the time she was approximately eight years old until she was approximately fourteen years old (2006 through 2012), and that the abuse continued until appellant moved out of the house, which was in 2010 when O.A. was twelve years old and in seventh grade.

Given all the evidence, the jury could have reasonably inferred at the very least that appellant was committing acts of sexual abuse against O.A. from 2008 through 2010. *See Jackson*, 443 U.S. at 319 (jury may draw reasonable inferences from evidence). Further, the jury could have reasonably believed that appellant had minimized his wrongdoing when speaking to interrogators and that O.A.'s testimony, which indicated much more frequent abuse over a longer time period, was more credible. *See* Tex. Code Crim. Proc. arts. 36.13, 38.04 (jury is sole judge of credibility of witnesses and weight to be given witnesses' testimony); *Jackson*, 443 U.S. at 319 (jury may resolve inconsistencies or conflicts in witnesses' testimony). Based on all of the evidence presented at trial, we conclude that the evidence is sufficient to support the jury's determination that appellant was guilty of continuous sexual abuse of a child. Accordingly, we overrule appellant's first issue.

### Jury Charge

In his second issue, appellant contends that the trial court erred in failing to instruct the jury that the jury could consider only evidence of acts of sexual abuse occurring after September 1, 2007. In reviewing claims of jury-charge error, we first determine if there was error, and then, if there was error, we decide whether the error caused sufficient harm to warrant a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Kuhn*, 393 S.W.3d at 524. The amount of harm necessary to warrant a reversal depends on whether the appellant objected to the jury charge. *Ngo*, 175 S.W.3d at 743; *Kuhn*, 393 S.W.3d at 524. If the appellant preserved error with a timely objection in the trial court, the record need only show "some harm" to warrant a reversal. *Ngo*, 175 S.W.3d at 743; *Kuhn*, 393 S.W.3d at 524. If the appellant did not preserve error, we will reverse only if the record shows "egregious harm." *Ngo*, 175 S.W.3d at 743-44; *Kuhn*, 393 S.W.3d at 524.

6

In this case, appellant did not object to the jury charge at trial, making his complaint on appeal subject to an "egregious harm" analysis in the event he shows the existence of an error.

Regarding the first step of the jury-charge analysis—whether there was error in the jury charge—appellant argues that the jury charge was erroneous in allowing the jury to convict him based on conduct occurring before the effective date of the statute. Specifically, appellant complains of the following language in the charge:

> Members of the jury, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant, Julio Hernandez, or the exact date when those acts were committed. You are required to agree unanimously that the defendant, Julio Hernandez, during a period that is 30 or more days in duration committed two or more acts of sexual abuse.
>
> . . . .
>
> You are further charged as the law in this case that the State is not required to prove the exact date alleged in the indictment but may prove the offense, if any, to have been committed at a time prior to the presentment of the indictment so long as said offense, if any, occurred within the statute of limitations. With regard to the offenses of Continuous Sexual Assault of a Young Child, Aggravated Sexual Assault of a Child, Indecency with a Child by Contact and Indecency with a Child by Exposure there is no statute of limitations. Therefore, you are charged as a part of the law in this case that the State is not required to prove the exact dates alleged in the indictment but may prove the offenses, if any, to have been committed at any time prior to October 23, 2012 [the date of presentment of the indictment].

Consistent with previous decisions of this Court addressing language similar to that in the second paragraph above, we agree with appellant that the charge was erroneous.[2] *See Kuhn,*

---

[2] The first paragraph quoted above, which merely explains that the State is not required to prove the exact dates of each act of sexual abuse, is a proper instruction. *Michell v. State,*

7

393 S.W.3d at 524; *Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd) (language was erroneous where there was nothing in paragraph explaining that jury could not convict defendant for acts occurring before September 1, 2007). Having determined the jury charge contained error, we now turn to an analysis of whether the error caused "egregious harm."

Under the "egregious harm" standard, reversal is required only if appellant suffered harm so egregious that he was denied a fair and impartial trial. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). In determining whether Appellant was deprived of a fair and impartial trial, we review (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record as a whole. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); *Almanza*, 686 S.W.2d at 171. Egregious harm means that the charge error affected the very basis of the case, deprived the defendant of a valuable right, vitally affected a defensive theory, or made a case for conviction clearly and significantly more persuasive. *Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 172.

Based on the above factors, we conclude that the charge error was not egregiously harmful. In the jury charge, the introduction paragraph stated that the allegation at issue was that appellant committed the offense of continuous sexual abuse of a young child "on or about the 1st day

---

381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.) (legislature created statute to address sexual assaults against children who are typically unable to identify exact dates of ongoing sexual abuse); *Martin v. State*, 335 S.W.3d 867, 874 (Tex. App.—Austin 2011, pet. ref'd) ("It was not incorrect to instruct the jurors that in a prosecution for continuous sexual abuse of a young child, the State is not bound to prove the exact dates alleged in the indictment.").

of September 2007 through the 25th day of December 2010." Then, the charge repeated the same date range in the application paragraph for the offense of continuous sexual abuse of a child, stating:

> Bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Julio Hernandez, on or about the 1st day of September, 2007, through the 25th day of December, 2010, and before the presentment of this indictment in the County of Travis and State of Texas, during a period that was 30 days or more in duration, committed two or more acts of sexual abuse against [O.A.], a child younger than 14 years of age . . .

The correct statement of law in the application paragraph mitigates against a finding of egregious harm. *Kuhn*, 393 S.W.3d at 529-30. Further, the charge continued to use the September 1, 2007 start date for six lesser-included offense application paragraphs, either alleging that the lesser-included offense occurred "on or about the 1st day of September, 2007, and before the presentment of this indictment . . ." or "on or about the 1st day of September, 2007." Thus, the jury charge repeatedly used September 1, 2007 as a start date for any offenses that the jury may have considered.

Regarding the state of the evidence, we have already determined that the evidence presented was sufficient to prove that appellant was guilty of the offense of continuous sexual abuse of a child based on acts that occurred after September 1, 2007. Appellant's videotaped admissions alone are enough evidence to convict him of the offense based on acts occurring after September 1, 2007, as he admitted to committing acts of sexual abuse starting when O.A. was eleven or twelve years old (which was 2009 and 2010) and lasting for two years. In addition, although the jury could not convict appellant for continuous sexual abuse of a child based on his conduct prior

9

to September 1, 2007, the jury could consider the previous conduct as circumstantial evidence of appellant's conduct after September 1, 2007. *See* Tex. Code Crim. Proc. art. 38.37; *Martin*, 335 S.W.3d at 876.

Further, during closing arguments, the prosecutor stated that the relevant date range for the jury's consideration was September 1, 2007 through December 25, 2010, and the prosecutor then went on to focus her argument on the evidence of sexual acts occurring after September 1, 2007, when O.A. was eleven and twelve years old. Specifically, the prosecutor argued the following:

> One of the first things I want to talk about is the charge that the Court just went over with you. This is the only thing that we have to prove in order to prove continuous sexual abuse of a young child. These are our only elements. The defendant, there is no problem with that, we know who the defendant is. On or about September 1st, 2007, through December 25th, 2010, we know it's on or about. We don't have to prove exact dates.
>
> . . . .
>
> We have to prove that [appellant] did two or more acts during this period of time that we have alleged.
>
> . . . .
>
> [O.A.] was nervous, and she was scared to testify, and in front of this really—this roomful of strangers and the defendant, somebody who had violated her for years, and she was having a hard time remembering exactly when it started. But she knew that it went on for a minimum of at least a year, and she said the last time happened when she was in seventh grade.
>
> . . . .
>
> [Appellant] very specifically said that he penetrated her vagina with his finger, so we know that he was clearly penetrating her sexual organ with his finger . . . . He also clearly said that he had sexual intercourse with her. He said that he placed his penis inside her vagina, and he said this happened four times . . . . Later on in that

conversation . . . . [h]e said that this went on for two years. He said that she was eleven or twelve when it started.

As shown in the above excerpts, the prosecutor's argument consistently directed the jury to the proper time period.

A review of the record—including the jury charge, evidence presented at trial, and arguments of counsel—shows that the jury could have convicted appellant of continuous sexual abuse of a child even if the jury charge had included an instruction limiting the jury's consideration to acts occurring after September 1, 2007. Accordingly, we conclude that the charge error was not egregiously harmful to appellant, and we overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment of conviction.

 

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed: October 15, 2015

Do Not Publish

11

Julio Hernandez
ID: 1892013
Mc Connell Unit
3001 S. Emily Dr
Beeville Tx 78102

SAN ANTONIO TX 780
RIO GRANDE DISTRICT
13 NOV 2015 PM 1 L

Court of Criminal Appeals
P.O. box 12308
Austin, Texas, 78711

78711-230808