**AFFIRMED as modified; Opinion Filed July 25, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00784-CR**
**No. 05-18-00785-CR**

**NICHOLAS LEON ALEXANDER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F14-39330-R & F17-10320-R**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Whitehill, and Justice Partida-Kipness
Opinion by Justice Partida-Kipness

Appellant, Nicholas Leon Alexander, was charged by indictment with the offenses of aggravated sexual assault of a child and continuous sexual abuse of a child under the age of fourteen. Alexander waived his right to a jury and was tried by the court on a plea of not guilty. The trial court found Alexander guilty of each offense, as alleged in the indictments, and assessed punishment at thirty years' imprisonment in the continuous sexual abuse case, and life imprisonment in the aggravated sexual assault case. On appeal, Alexander challenges the sufficiency of the evidence to support the conviction for continuous sexual abuse of a child contending that: (1) the evidence is insufficient to show that he committed the acts of sexual abuse against J.H. after the effective date of the statute; (2) the evidence is insufficient to show that J.H. was under the age of fourteen at the time of the sexual abuse; and (3) the evidence is insufficient

to establish two predicate offenses for continuous sexual abuse against J.H. Alexander also challenges the sufficiency of the evidence to support the conviction for aggravated sexual assault of a child. In a cross-issue, the State requests that we modify the judgments to reflect the age of the victims and that sex-offender registration requirements apply. The State also requests that the judgments be modified to include a special finding that the victims were younger than fourteen at the time of the offense. As modified, we affirm the trial court's judgments. Because the issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## BACKGROUND

**Continuous Sexual Abuse.**

The indictment in the continuous sexual abuse case charged Alexander with committing two or more acts of sexual abuse against J.H., during a period that was thirty days or more in duration, beginning on or about October 1, 2007, when he was seventeen years of age or older, and J.H. was a child younger than fourteen years of age. The acts of sexual abuse alleged were aggravated sexual assault of a child by (1) penetration of J.H.'s female sexual organ by Alexander's sexual organ, and (2) contact between the mouth of J.H. and Alexander's sexual organ.

J.H. testified that she was born on August 17, 1994. She moved to the Bent Tree Park Apartments in Addison with her mother, and brother and sister, in the summer of 2007 when she was twelve years old. She turned thirteen in August 2007. Alexander lived in the same apartment complex. J.H. first saw Alexander sometime in mid-July or August when she went to check the mail. He was standing outside his apartment looking at her in a way that made her feel uncomfortable.

J.H. saw Alexander again one Saturday morning in September 2007. Alexander asked J.H. her name and how old she was. After she responded, Alexander told J.H. that she was pretty, that

she did not look like a thirteen year old, and was not built like a thirteen year old. When J.H. tried to go into her apartment, Alexander stopped her, pinned her against a wall, and began touching her hair and body. When J.H. told him to stop, Alexander grabbed a fistful of her hair and pushed her head down towards his genitals. Alexander then forced J.H. to give him oral sex.

Alexander became close friends with J.H.'s sister and started coming over to the apartment. One day, less than a month after the first assault, Alexander walked into J.H.'s room, walked her into the bathroom, and forced her to give him oral sex. These sexual assaults happened at least six more times over the course of the next several weeks and months. J.H. testified that the incidents would be spaced out, one time only about two weeks went by, but then another time, a month would go by. In addition to the many instances of oral sex, there was one incident in which Alexander had vaginal intercourse with J.H.

J.H. testified that the first encounter with Alexander was in September, and the last one was in March.[1] There was an incident in which Alexander's brother tried to assault J.H., and the police were called. Shortly after that incident, Alexander moved out of his apartment. The last sexual encounter between J.H. and Alexander again involved oral sex. That encounter occurred after Alexander had moved out of the complex, and J.H. and her family moved into a new apartment in the same complex, but in a different building. J.H. was still thirteen at the time.

**Aggravated Sexual Assault.**

The indictment in the aggravated sexual assault case alleged contact between the mouth of P.H. and Alexander's sexual organ. P.H.'s mother, Sascha Chester, testified P.H. was born on December 15, 2007, and was six years old at the time of the incident. In 2014, she was dating

---

[1] During direct examination J.H. was asked if the assaults, from "the first time to the last time, . . . happen over a month sometimes," to which J.H. responded, "The first encounter was in September and the last one was March '07." During cross examination, J.H. was confronted with the affidavit she gave the police in which the first line stated that her family moved to the Bent Tree apartments in July 2008. J.H. testified she made a mistake, that it was a typo, and that she put the year 2007 throughout the rest of the narrative in the affidavit. J.H. affirmed the fact that the affidavit stated the last encounter occurred in early 2008.

Alexander. She and Alexander, her two children, and Chester's brother and sister, all lived together with Chester's mother in her mother's house. On June 7, 2014, they were getting ready to go somewhere when Alexander told Chester that P.H. needed to brush her teeth again. Chester yelled at P.H. to go brush her teeth again and then went downstairs. When Chester was getting ready to go back upstairs, she saw P.H. coming down the stairs. P.H. stopped and said, "Wade put his weenie in my mouth."[2] P.H. repeated it again when Chester questioned her about what she had said. Chester testified that she could not remember if P.H. "said wee-wee or weenie," but she took either term to mean that P.H. was referring to a man's genitals. Chester testified that when she talked to Alexander about what P.H. had said, he denied it, and told her that P.H. must be confused.

P.H. testified that when she was six or seven, her mother's boyfriend[3] lived with them at her grandmother's house. One day he took her to the bathroom, closed the door, turned off the lights, and told her to open her mouth. When she opened her mouth, he put something in it that felt like rubber. When he turned the lights back on, P.H. saw him pull his pants up. When questioned further about what was put in her mouth, P.H. stated, "He put his weenie in my mouth," describing it as what boys use, "To use the restroom." P.H. also described it as, "like a hot dog," but with "no bun on it" and drew a picture of it for the trial court. P.H. testified that when she was told she could leave, she went downstairs and told her mother what happened. P.H. also testified that there was another time, at night, when she was trying to go to sleep and Alexander put something in her mouth that felt the same, but she "didn't know what it was completely."

---

[2] Chester testified that her children called Alexander "Wade."

[3] P.H. could not remember his name or what he looked like, and could not identify Alexander in the courtroom.

The State also presented the testimony of two other young women, C.W. and A.M., who testified that they were sexually abused by Alexander for many years when they were children and Alexander lived with their families.

Alexander testified on his own behalf and denied having sexually abused P.H. or J.H. He claimed that he met J.H., but did not know her. He also denied that he ever abused C.W. Alexander's brother also testified on Alexander's behalf, stating that all of Alexander's accusers were liars, that he nor Alexander ever did anything inappropriate to J.H., and that Alexander did not do anything to P.H.

## ANALYSIS

### I. Sufficiency of Evidence.

In his first three issues, Alexander contends the evidence is insufficient to support his conviction for continuous sexual abuse of a child because the State failed to prove that he committed the acts of sexual abuse against J.H. after the effective date of the statute and that J.H. was under the age of fourteen at the time of the sexual abuse. He also contends the evidence is insufficient to establish two predicate offenses for continuous sexual abuse. In his fourth issue, Alexander contends the evidence is insufficient to support his conviction for aggravated sexual assault of a child because "any conclusion that he committed the alleged act would require impermissible speculation."

### A. Standard of Review.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences

–5–

in a manner that supports the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing the guilt of the accused. *Clayton*, 235 S.W.3d at 778. Circumstantial evidence alone can be sufficient to establish guilt. *Id*

## B. Continuous Sexual Abuse of a Child.

To establish the offense of continuous sexual abuse of a child, the State had to prove that during a period that is thirty or more days in duration, Alexander committed two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, when he was seventeen years of age or older, and J.H. was a child younger than fourteen years of age. TEX. PENAL CODE § 21.02(b). An act of sexual abuse includes aggravated sexual assault of a child. *Id.* § 21.02(c)(4). Although the exact dates of the abuse need not be proven, the offense does require proof that two or more acts of sexual abuse occurred during a period of thirty days or more. *Id.* § 21.02(b); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 38.07(b)(1); *Garner*, 523 S.W.3d at 271.

Alexander does not challenge the evidence proving that the sexual abuse against N.H. occurred during a period that was more than thirty days in duration, nor does he challenge the evidence proving that he sexually abused J.H. two or more times during that period. What Alexander does challenge is the evidence proving J.H.'s age during the period of abuse. Section 21.02 of the penal code, the statute defining the offense of continuous sexual abuse of a young child, became effective September 1, 2007, and does not apply to an offense committed before that date. *Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd). Further, section 21.02 applies only to the continuous sexual abuse of a child younger than fourteen. TEX. PENAL

CODE § 21.02(b)(2); *Martin*, 335 S.W.3d at 873. J.H. testified that she was born on August 17, 1994. Thus, in order to lawfully convict Alexander of continuous sexual abuse of a young child, the State had to prove that the period of abuse occurred between September 1, 2007, when the statute became effective, and August 17, 2008, J.H.'s fourteenth birthday.

J.H. testified that she first met Alexander in the summer of 2007, when she was twelve years old and that the abuse started in September 2007 when she was thirteen years old. J.H. also testified the last sexual encounter between her and Alexander occurred when she was still thirteen years old. In his brief, Alexander admits that J.H.'s testimony showing she was born in August 1994, and was sexually abused by Alexander starting in September 2007, and ending in March, "would mean that the abuse JH suffered for the next six months concluded before she turned 14." Nevertheless, Alexander claims, "the evidence was substantially confused regarding the timeframe when the conduct transpired," and argues the conclusion the abuse began in September 2007 when J.H. was thirteen years old rests on speculation that J.H. was correct when she stated she turned thirteen in August 2007. Alexander also points to J.H.'s statement during her testimony that "The first encounter was in September and the last one was March '07," and argues that this evidence shows that the sexual abuse occurred before the statue took effect. In addition, he also points to the affidavit J.H. gave the police which begins with the statement that she and her family moved to the Bent Tree apartments in July 2008, and argues that this evidence shows the sexual abuse occurred after J.H. was already fourteen years old.

We disagree that the evidence was substantially confused regarding the timeframe when the sexual abuse occurred. J.H.'s testimony that she was born in August 1994 was not controverted by any other evidence. Further, during her testimony, J.H. affirmed the fact that when the abuse ended in March, she was still thirteen years old, and was adamant that she knew how old she was when the abuse occurred. J.H. explained that the July 2008 date in the affidavit was a mistake, a

typo, "because I know exactly what year it happened and I know exactly how old I was when it happened." J.H. also testified she put the year 2007 throughout the rest of the narrative in the affidavit, and affirmed the fact that the affidavit stated that the last encounter occurred in early 2008. The trial court, as fact-finder, is the sole judge of the credibility of J.H.'s testimony and reconciled conflicts in that testimony against Alexander. We may not substitute our judgment for that of the fact-finder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

Alexander also contends the evidence is insufficient to establish two predicate offenses for continuous sexual abuse. He bases this claim on the fact that J.H. testified to only one instance of vaginal penetration by Alexander's sexual organ and failed to specifically describe the timing of this act of sexual abuse. Under the continuous sexual abuse of a child statute, the act-of-sexual-abuse element is defined as any act that is, among other things, aggravated sexual assault under penal code section 22.021. TEX. PENAL CODE § 21.02(c)(4). Section 22.021 identifies several alternative means of committing aggravated sexual assault, including penetration of the sexual organ of a child, and penetration of the mouth of a child, by the sexual organ of the actor. TEX. PENAL CODE §§ 22.021(a)(1)(B)(ii), (a)(1)(B)(iii). Proof of any two acts constituting the offense of aggravated sexual assault during a period that was thirty or more days in duration satisfies the act-of-sexual-abuse element required in the continuous sexual assault of a child statute. Appellant does not contest that the State proved two acts of penetration of J.H.'s mouth by Alexander's sexual organ during a period that was thirty or more days in duration. Further, contrary to Alexander's assertion, J.H.'s testimony does in fact describe the timing of the vaginal penetration, and indicated that the act occurred during the same six month period that all the other acts of sexual abuse occurred, i.e., between September 2007 and March 2008. J.H.'s testified that this one act of vaginal penetration "was in between" the other acts of sexual abuse and that all the sexual encounters between her and Alexander ended in March.

We conclude the evidence is sufficient to prove that J.H. was under fourteen years old during the duration of the sexual abuse and that the acts of sexual abuse began after the continuous sexual abuse of a child statute became effective. We also conclude the evidence is sufficient to prove two acts constituting aggravated sexual assault of a child of sexual abuse during a period that is thirty or more days in duration.

### C. Aggravated Sexual Assault of a Child.

In his fourth issue, Alexander contends the evidence is insufficient to support the conviction for aggravated sexual assault of a child. The indictment alleged contact between the mouth of P.H. and Alexander's sexual organ. P.H. testified Alexander[4] put his "weenie" in her mouth and described it as what boys use "To use the restroom." She said it felt like "rubber," and described it as, "like a hot dog." P.H. testified that after Alexander put it in her mouth and turned the lights back on, she saw him pull his pants up. P.H. also drew a picture of it for the court, showing its phallic shape.

A child victim's testimony is sufficient to support a conviction for sexual assault. TEX. CODE CRIM. PROC. art. 38.07(b)(1). Alexander argues that it "would require impermissible speculation" for the trial court to believe Alexander committed the offense based on P.H.'s testimony concerning a single instance of abuse. We disagree. The description given by P.H. regarding the "weenie" Alexander put in her mouth, and the picture she drew for the trial court, does not require a rational factfinder to speculate that what P.H. was referring to was Alexander's sexual organ. Indeed, when P.H. told her mother that Alexander "put his weenie in [her] mouth," she immediately understood the term to mean that P.H. was referring to Alexander's genitals. We

---

[4] Although P.H. could not remember Alexander's name and could not identify Alexander in the courtroom, his identity was never at issue.

conclude the evidence is sufficient to support the conviction for aggravated sexual assault of a child.

We overrule Alexander's first, second, third and fourth issues.

## II. Modification of the Judgments.

In a cross-issue on appeal, the State requests that we modify the judgments to reflect the age of the victims and that sex-offender registration requirements apply. The State also requests that the judgments be modified to include an affirmative finding that the victims were younger than fourteen at the time of the offense. This Court has the authority to modify an incorrect judgment to correct a clerical error when the evidence necessary to correct the judgment appears in the record. *See Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

Alexander was convicted of continuous sexual abuse of a child and aggravated sexual assault of a child, offenses which are both subject to the sex offender registration requirements of Chapter 62 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. art. 62.001(5)(A). The judgment in both cases erroneously state that the sex offender registration requirements do not apply and that the age of the victim at the time of the offense is "N/A." We modify the judgment in the each case to show that sex offender registration requirements apply. We modify the judgment in the continuous sexual abuse of a child case to show that the victim's age was thirteen at the time of the offense, and the judgment in the aggravated sexual assault case to show that the victim's age was six at the time of the offense. *See id*. art. 42.01 §1(27), 62.051; *Backusy v. State*, No. 05-17-01288-CR, 2018 WL 5730166, at *3 (Tex. App.—Dallas Nov. 2, 2018, pet. ref'd) (mem. op., not designated for publication).

The code of criminal procedure requires an affirmative finding that the victim of a sexually violent offense was younger than fourteen years of age. *See* TEX. CODE CRIM. PROC. art. 42.015(b).

A "sexually violent offense" includes continuous sexual abuse of a child, and aggravated sexual assault of a child "committed by a person 17 years of age or older." *See id.* art. 62.001(6). The record shows that Alexander was born on March 14, 1981. The continuous sexual abuse of a child offense was committed during a six month period from September 2007 to March 2008, when Alexander was twenty-seven years old. The aggravated sexual assault of a child offense was committed on June 7, 2014, when he was thirty-five years old. We modify the judgment in each case to reflect a finding that the victim "was younger than 14 years of age at the time of the offense." *See id.* art. 42.015(b); *Backusy*, 2018 WL 5730166, at *4.

We sustain the State's cross-issue.

## CONCLUSION

As modified, we affirm the trial court's judgments.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
180784F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NICHOLAS LEON ALEXANDER,
Appellant

No. 05-18-00784-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F14-39330-R.
Opinion delivered by Justice Partida-
Kipness, Chief Justice Burns and Justice
Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We DELETE the statement "Sex Offender Registration Requirements do not apply to the Defendant" and REPLACE it with the statement "Sex Offender Registration Requirements do apply to the Defendant."

We DELETE the term "N/A" following the phrase: "The age of the victim at the time of the offense was," and REPLACE it with the term "6 years old."

We ADD the finding that the victim was younger than 14 years of age at the time of the offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of July, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NICHOLAS LEON ALEXANDER, Appellant

No. 05-18-00785-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F17-10320-R.
Opinion delivered by Justice Partida-Kipness, Chief Justice Burns and Justice Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We DELETE the statement "Sex Offender Registration Requirements do not apply to the Defendant" and REPLACE it with the statement "Sex Offender Registration Requirements do apply to the Defendant."

We DELETE the term "N/A" following the phrase: "The age of the victim at the time of the offense was," and REPLACE it with the term "13 years old."

We ADD the finding that the victim was younger than 14 years of age at the time of the offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of July, 2019.